1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY TOMELLOSO, RUBEN H. TOMELLOSO, | No. 2:21-cv-00507-MCE-JDP |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| CITY OF VACAVILLE, NATHAN BENEVIDES, DANIEL TORRES and DOES 1 to 50, | |
| Defendants. | |

        Through the present lawsuit, Plaintiff Ruben Tomelloso ("Ruben") alleges that his

home was illegally searched, and he was handcuffed while that search was conducted,

without a warrant and absent probable cause.  Ruben's wife, Mary Tomelloso ("Mary"),

while not present at the time of the search, is also a named Plaintiff.  Defendants include

two City of Vacaville ("City") police officers who engaged in the search, Nathan

Benevides and Daniel Torres, as well as the City itself.  Plaintiffs' lawsuit asserts five

separate causes of action, which include a claim for violations of 42 U.S.C. § 1983 as

well as state common law claims for assault and battery, false imprisonment, negligence

and intentional infliction of emotional distress.  After the matter was initiated in state

court, Defendants removed the matter here, citing federal question jurisdiction under

28 U.S.C. § 1331 given Plaintiffs' assertion of a federal § 1983 claim.

1

1  Presently before the Court is Defendants' Motion to Dismiss (ECF No. 6), brought

2  pursuant to Federal Rule of Civil Procedure 12(b)(6), on grounds that Plaintiffs'

3  Complaint fails to state viable claims with respect to certain Defendants named in the

4  various causes of action.  As set forth below, that Motion is GRANTED.

5

6  **BACKGROUND**[1]

7

8  According to Plaintiffs' Complaint, on the afternoon of January 22, 2020,

9  numerous City police officers, including Defendants Benevides and Torres, arrived at

10  372 Elsinore Drive in Vacaville, California, where the Tomellosos, who have been

11  married over fifty years, have lived since approximately 1988.   Ruben, who is retired,

12  was the only one at home and the officers told him they were there to search both his

13  home and the vehicles in his driveway.  The officers allegedly declined to respond when

14  Ruben asked whether they had a valid search warrant.  Instead, they removed Ruben

15  from the house and locked handcuffs "onto his wrists with great force" that caused

16  "significant pain."   Pls.' Compl., ECF No. 1, Ex. A, ¶ 18.  The officers then forced Ruben

17  to sit outside, in the cold and in "clear view of all his neighbors," while they searched the

18  entire property, including at least one of the Tomelloso vehicles, during the next 45 to 90

19  minutes.  Id. at ¶ 14.

20   Once Ruben was allowed to return inside after the officers departed, he found

21  "personal property strewn about the house, drawers and cabinets open, and the house

22  in general disarray."  Id. at ¶ 17.  Ruben claims at no time was he informed of the legal

23  basis for his search and detention, and Plaintiffs claim that the officers found no

24  evidence of any crime and took nothing from the home as potential evidence.  Plaintiffs

25  further allege that at no time were they ever charged with or prosecuted for a crime as a

26  result of the search.

27  _____

28  [1] Unless otherwise indicated, the facts set forth in this section are taken, at times verbatim, from the allegations contained in Plaintiffs' Complaint.

2

1

2

**STANDARD**

3        On a motion to dismiss for failure to state a claim under Federal Rule of Civil

4   Procedure 12(b)(6), all allegations of material fact must be accepted as true and

5   construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

6   Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain

7   statement of the claim showing that the pleader is entitled to relief' in order to 'give the

8   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell

9   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

10   47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

11   detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

12   his entitlement to relief requires more than labels and conclusions, and a formulaic

13   recitation of the elements of a cause of action will not do."  Id. (internal citations and

14   quotations omitted).  A court is not required to accept as true a "legal conclusion

15   couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

16   Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief

17   above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright &

18   Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the

19   pleading must contain something more than "a statement of facts that merely creates a

20   suspicion [of] a legally cognizable right of action")).

21        Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

22   assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and

23   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

24   to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

25   the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright &

26   Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to

27   relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their

28   claims across the line from conceivable to plausible, their complaint must be dismissed."

3

Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

### A.   Section 1983 Claims

The First Cause of Action, asserted by both Plaintiffs, alleges violations of 42 U.S.C. § 1983 on multiple constitutional grounds, including rights pertaining to 1) unreasonable search and seizure under the Fourth Amendment of the United States Constitution; 2) deprivation of life or liberty without due process as guaranteed by the Fifth and Fourteenth Amendments; 3) excessive force under the Fourth, Fifth and Fourteenth Amendments; 4) equal protection under the Fourteenth Amendment; and

4

5) privacy under the Fourth and Ninth Amendments.  Compl., ¶ 24.  The Complaint's factual allegations, however, relate only to claims of unlawful search and seizure, along with potential excessive force in handcuffing Ruben.

Defendants' Motion to Dismiss alleges that given those facts, Plaintiffs state no viable claim besides the protections guaranteed by the Fourth Amendment.  As Defendants point out, because the Fourth Amendment explicitly identifies the right to be free of unreasonable searches and seizures, the Supreme Court has held for § 1983 purposes that its provisions control over any other constitutional protections that also may arguably apply.  See, e.g., Albright v. Oliver, 510 U.S. 266, 271, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment . . . must be the guide for analyzing those claims.'").[2]  In the context of unreasonable search and seizure and excessive force claims, the Court consequently observed that "[t]he Framers considered the matter of pretrial deprivations of library and drafted the Fourth Amendment to address it.'"  Id. at 274.  It follows, then, that Plaintiffs' efforts to invoke additional protection on due process, equal protection or privacy grounds under the Fifth, Ninth or Fourteenth Amendments for the same conduct must necessarily fail.[3]

---

[2] To the extent Ruben alleges excessive force in addition to unreasonable search and seizure during the course of the incident giving rise to this action, the Supreme Court, in Graham v. Connor, 490 U.S. 386, (1989) has made it clear that whether the force used to effect a particular seizure is reasonable" is also analyzed under the Fourth Amendment.  Id. at 396, see also Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir. 2011).

[3] Plaintiffs have not opposed Defendants' Motion to Dismiss the First Cause of Action to the extent it includes privacy and equal protection claims.  While Plaintiffs do contend that due process rights under the Fourteenth Amendment are properly implicated, the authority they cite for that proposition is distinguishable.  In both Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001) and Haygood v. Younger, 769 F.2d 1350 (9th Cir. 1985), for example, the incarcerated criminal defendants remained jailed for extended periods of time after they should have been released, with the Lee court recognizing that a Fourteenth Amendment due process claim may indeed exist if, "after the lapse of a certain amount of time," officials fail to release a detainee when they knew, or should have known, was so entitled.  Lee, 250 F.3d at 683.  That circumstance, however, bears no similarity to the present case, where Ruben's detention was only 45-90 minutes in length, and no authority has been cited that such a brief detention triggers due process concerns as opposed to the search and seizure protections guaranteed by the Fourth Amendment.  Indeed, an additional case cited by Plaintiffs, Oviatt v. Pearce, 954 F.2d 1470 (9th Cir. 1992), actually supports that distinction by recognizing that "the paradigmatic liberty interest in the due process clause is freedom from incarceration," as opposed to the brief detention involved here.

1    Moreover, to the extent that Mary is included as a party to Plaintiffs' Fourth

2    Amendment cause of action, her claim fails on more fundamental grounds.  The

3    Complaint makes it clear that she was not present at the time of the search and thus not

4    personally subject to either excessive force or unlawful seizure.  Those claims, if any,

5    accrue to her husband.  Mary cannot indirectly assert her husband's alleged deprivations

6    in that regard since "constitutional claims are personal and cannot be asserted

7    vicariously."  Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997).[4]  The fact

8    that Mary was not at home during the search, however, does not foreclose her Fourth

9    Amendment claim for unreasonable search.  A reasonable expectation of privacy can

10   trigger protections under the Fourth Amendment for search and seizure, and it is beyond

11   question that Mary had such an expectation in the sanctity of her own home irrespective

12   of whether she was there at the time the search was undertaken.  See, e.g., U.S. v.

13   Jacobsen, 466 U.S. 109, 113 (1984).

14   In addition, with respect to the City's inclusion as a defendant to Plaintiffs' § 1983

15   claim, a public entity is subject to liability only when a violation of a federally protected

16   right can be attributed to: (1) an express municipal policy like an ordinance, regulation or

17   policy statement (Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691

18   (1978)); (2) a "widespread practice that, although not authorized by written law or

19   express municipal policy, is 'so permanent and well settled as to constitute a 'custom or

20   usage' with the force of law" (City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988);

21   (3) the decision of a person with "final policymaking authority" (Id. at 123); or

22   (4) inadequate training that is deliberately indifferent to an individual's constitutional

23   rights (City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

24   In pleading a § 1983 claim against a public entity under one or more of the above

25   theories, the Ninth Circuit has made it clear that the standards articulated by the

26   Supreme Court in Twombly and Iqbal apply.  AE ex rel. Hernandez v. County of Tulare,

27   666 F.3d 631, 636 (9th Cir. 2012).  As Iqbal noted, "threadbare allegations of a cause of

28
_____

[4] Tellingly, Plaintiffs do not appear to contend otherwise in their Opposition.

1    action's requirements, supported by mere conclusory statements, must be ignored, with

2    only "well pleaded factual allegations" being sufficient to withstand pleading inquiry.

3    Ashcroft v. Iqbal, 556 U.S. at 678-79.  Iqbal's directive in this regard has been extended

4    in the context of municipal liability claims to require specific factual averments, including

5    both identifying the challenged policy/custom, delineating how the policy/custom at issue

6    was deficient, and how any deliberate indifference occasioned thereby harmed the

7    plaintiff.  See Young v. City of Visalia, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009).

8            Here, Plaintiffs' Complaint contains absolutely no factual allegations to support a

9    plausible municipal liability claim against the City.  At most, the Complaint suggests that

10   the City is liable on respondeat superior grounds for alleged wrongdoing by its police

11   officers.  The City, however, is not subject to such vicarious liability under § 1983 as a

12   matter of law.  Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir. 2007); Monell, 436 U.S.

13   at 691.  Because no facts are alleged relating to any City policy, pattern or custom that

14   could give rise to liability under § 1983.  Consequently, Plaintiffs' First Cause of Action

15   fails to state a viable claim against the City.

16           **B.    Tort Claim Pleading Requirements**

17           Plaintiffs' Second through Fifth Causes of Action, which allege assault and

18   battery, false imprisonment, negligence and intentional infliction of emotional distress,

19   respectively, against all Defendants, are state common law claims and as such are

20   subject to the claims' presentation requirements contained within the California Tort

21   Claims Act, California Government Code §§ 810, et seq.

22           As Defendants point out, the Tort Claims Act, at §§ 945.4 and 950.2, requires the

23   presentation of a timely claim to the public entity and rejection of the claim as a condition

24   precedent to any lawsuit against a public entity or its employee.  See Taylor v. Mitzel,

25   82 Cal. App. 3d 665, 671 (1978); Harman v. Mono General Hosp., 131 Cal. App. 3d 607,

26   613 (1982).  Failure to comply with those requirements bars a plaintiff from thereafter

27   maintaining any civil action as to the entity or employee.  DiCampli-Mintz v. County of

28   Santa Clara, 55 Cal. 4th 983, 990 (2012).  "In federal court, the failure to allege facts that

7

1    either demonstrate or excuse compliance with the Government Claims statutes will

2    subject a state law claim to dismissal."   Hill v. City of Clovis, No. 1:11-cv-1391 AWI

3    SMS, 2012 WL 787609 at *10 (E.D. Cal. 2012), citing Mangold v. Cal. Public Utils.

4    Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).

5           Here, Plaintiffs simply assert that they "have complied with all governmental claim

6    requirements under California law prior to the filing of this action."   Pls.' Compl., ¶ 10.

7    That allegation is no more than a legal conclusion and is unsupported by any facts

8    demonstrating compliance with the Tort Claims Act.[5]   Plaintiffs' Second through Fifth

9    Causes of Action fail on that ground alone.[6]

10

11                                      **CONCLUSION**

12

13          For all the above reasons, Defendants' Motion to Dismiss (ECF No. 6) is

14   GRANTED[7]  as follows:

15          1.   Plaintiffs' First Cause of Action is dismissed, with leave to amend, to the

16                extent it states claims premised on any constitutional provision besides the

17                Fourth Amendment to the United States Constitution and its protections

18                against unreasonable searches and seizures, and excessive force;

19          2.  Plaintiffs First Cause of Action is dismissed, with leave to amend, as to any

20                claim asserted by Plaintiff Mary Tomelloso other than her claim that she was

21                subject to unlawful search in violation of the Fourth Amendment;

22

23          [5] While Plaintiffs contend in their opposition that they both filed a tort claim and received a
     rejection of that claim from the City before filing suit, those after-the-fact allegations do not render their

24   Complaint sufficient as it currently stands.

            [6] Although Defendants assert that Plaintiffs' state law claims also fail to state any viable
25   substantive cause of action against the City, and further fails to state a claim for intentional infliction of
     emotional distress as to any Defendant, given Plaintiffs' fundamental failure to satisfy the jurisdictional
26   presentation requirements for making those claims, it is not necessary to address those additional
     arguments at this juncture, and the Court declines to do so.
27
            [7] Having determined that oral argument would not be of material assistance, the Court ordered the
28   Motion submitted on the briefs pursuant to E.D. Cal. Local R. 230(g).

                                              8

3.  Plaintiffs' First Cause of Action is dismissed, with leave to amend, as to any claim asserted against the City of Vacaville;

4.  Plaintiffs' Second through Fifth Causes of Action are dismissed for failure to allege compliance with the California Tort Claims Act, with leave to amend.

If Plaintiffs desire to file a First Amended Complaint, they are directed to do so not later than twenty (20) days following the date this Memorandum and Order is electronically filed.  If no amended complaint is timely filed, the causes of action dismissed by virtue of this Order will be deemed dismissed with prejudice without further notice to the parties.

IT IS SO ORDERED.

Dated:  December 13, 2021

MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE